Minerva CASTILLO, Individually, and as Next Friend of Stephanie Castillo and Daisy Jovita Castillo, Minors, and as Representative of the Estate of Roberto Castillo, Deceased, Felix Castillo and Hermalinda Castillo, Petitioners,

v.

PRICE CONSTRUCTION, INC., Respondent.

No. 04–0625.

Supreme Court of Texas.

Dec. 16, 2005.

Rehearing Denied Feb. 24, 2006.

Justice O'NEILL, dissenting.

Roberto Castillo was killed when his vehicle, heading northbound, collided head-on with Carol Sunderland's southbound vehicle in a construction zone that Price Construction created and controlled, and which the evidence showed was poorly marked.

---

A jury found Price eighty percent responsible for the accident, but a divided court of appeals reversed, holding there was no evidence to show that Price had actual knowledge of the construction zone's unreasonably dangerous condition. 147 S.W.3d 431, 437. The court of appeals failed to consider, however, the inference of knowledge the jury was permitted to draw from the fact that Price created the allegedly dangerous condition, an inference we have consistently allowed. Because the court of appeals improperly ignored this permissible inference that favors the jury's verdict, I respectfully dissent to the Court's denial of Castillo's petition for review.

Price Construction was contractually and exclusively responsible for maintaining traffic control and safety devices in the construction zone where the collision underlying this suit occurred. The highway construction required Price to divert traffic lanes from their normal routes, and state regulations required Price to display various traffic-control devices, including reflective buttons, vertical panels, and barrels, to guide drivers traveling through the zone. Throughout the course of the construction period, there were several lane-configuration changes. At trial, witnesses testified that the construction zone was confusing and traffic lanes were not marked, or were improperly marked, so that lane delineation was difficult to ascertain. When the accident occurred, the roadway was divided into three lanes, one southbound and two northbound. Carol Sunderland's truck apparently crossed over her single southbound lane of traffic and collided head-on with Roberto Castillo's northbound vehicle, causing his vehicle to burst into flames.

Castillo's family filed suit against Price Construction, alleging that Price's failure to follow safety standards in creating and maintaining the construction zone, and its failure to provide positive guidance to drivers traveling through the zone, caused the fatal crash. The jury returned a verdict in the plaintiffs' favor, upon which the trial court rendered judgment. In reviewing the evidence, the court of appeals acknowledged that various inspection reports had cited Price for numerous deficiencies in the construction zone. *Id.* at 437. Nevertheless, the court concluded this was no evidence of Price's actual knowledge because the reports did not specifically inform Price of the dangerous condition alleged to have caused the collision. *Id.* at 438. In my view, the court of appeals' analysis ignores the inference of actual knowledge we have allowed jurors to draw from the fact that the defendant created the complained-of condition.

In *Coffee v. F.W. Woolworth Co.,* the plaintiff was injured when she fell over a low-lying, empty platform intended to hold merchandise. 536 S.W.2d 539 (Tex.1976). There was a dispute whether Woolworth and its employees were aware of the empty platform; the court of appeals held that the record was devoid of any direct evidence that Woolworth had actual knowledge that the platform was empty. *Coffee v. F.W. Woolworth Co.,* 526 S.W.2d 793, 795 (Tex.Civ.App.—Corpus Christi 1975), *rev'd,* 536 S.W.2d 539. Nevertheless, this Court reasoned that, because the store's policy was to avoid letting its platforms become empty from normal-course customer purchases, the jury "could have reasonably inferred that the platform was empty because store personnel were changing displays [*i.e.,* created the condition] and that the defendants had actual notice." *Id.*

In *Keetch v. Kroger Co.,* the plaintiff slipped and fell crossing a slick spot on the floor created by Kroger's spraying of "Green glo" shine on plants in its floral department. 845 S.W.2d 262 (Tex.1992).

The trial court submitted the case on a premises-liability theory. The jury found the slippery spot constituted an unreasonable risk of harm to Keetch, but failed to find that Kroger knew or should have known of the condition. *Id.* at 264. We affirmed the judgment, rejecting the plaintiff's argument that Kroger's creation of the condition meant that Kroger had actual knowledge as a matter of law. *Id.* Although declining to create an automatic liability rule, we did note: "The fact that the owner or occupier of a premises created a condition that posed an unreasonable risk of harm may support an inference of knowledge." *Id.* at 265. Thus, while the jury in *Keetch* failed to find that Kroger had actual knowledge of the dangerous condition, the jury would have been free to infer such knowledge had it determined the evidence warranted such an inference. In discussing *Coffee,* the Court in *Keetch* went on to conclude that "the fact that the [defendant] created the condition was circumstantial evidence of knowledge." *Id.* at 266. *See also Collard v. Interstate Northborough Partners,* 961 S.W.2d 701, 703 (Tex.App.—Tyler 1998, no pet.) ("[The] creation of a condition is circumstantial evidence, and it raises a fact issue as to knowledge.").

*Coffee* and *Keetch* continue to stand for the proposition that juries may, but need not, infer that a defendant had actual knowledge of a dangerous condition that it created. The Court's decision to uphold the jury's contrasting findings in *Coffee* and *Keetch* illustrates the point: it is within the factfinder's province to decide whether an inference of actual knowledge against one who creates a dangerous condition is justified in light of the circumstances presented.

In this case, Price's absolute control of the construction-zone premises was undisputed. Price's contract was governed by Texas Department of Transportation guidelines, which state:

> The contractor shall have the sole responsibility for providing, installing, moving, replacing, maintaining, cleaning, and removing upon completion of work all barricades, warning signs, barriers, cones, lights, signals, and other such type devices and of handling traffic as shown on the plans or as directed, approved by the engineers.... The contractor shall be responsible for maintaining work zone and existing pavement markings on all roadways open to traffic within the project's limits unless otherwise stated in the plans.

Price had exclusive responsibility for and control over traffic movement through the construction zone, and the lane-delineation and demarcation conditions that existed when the accident occurred were entirely of Price's creation. Multiple Texas Department of Transportation reports had put Price on notice of safety deficiencies throughout the construction zone on multiple occasions. Those violations included, among others:

(1) old yellow lines from prior lane configurations, toward the center of the southbound lane, were not obliterated, and could have caused confusion as to the position of the southbound lane;

(2) construction debris and dirt covering two-to-three feet of the outer edge of the southbound lane, making the lane appear smaller;

(3) two reflective buttons in the intersection crosswalk, which could have been mistaken for the outside edge of the southbound lane; and

(4) failure to mark properly the merging of two southbound lanes into one, by using the preexisting broken line and barrels, rather than vertical

panels as required by safety guidelines.

Additionally, Price's superintendent for the construction zone testified that he knew reflective buttons, which were used instead of painted lines to mark the lanes, were missing from an intersection in the zone. In sum, it would not have been unreasonable for the jury to infer that Price had knowledge of the safety deficiencies that proximately caused Castillo's death, even if they were not specifically cited in the Texas Department of Transportation reports.

The creator of a dangerous condition may not escape responsibility by looking the other way and claiming no knowledge of the danger it created. Because the court of appeals' decision increases the likelihood that defendants will do just that, I respectfully dissent from the Court's decision to deny review.