

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-24-00032-CV

_____

TEXAS DEPARTMENT OF TRANSPORTATION, APPELLANT

V.

RUSSELL SMITHSON, APPELLEE

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-311120-19, Honorable J. Patrick Gallagher, Presiding

May 15, 2025

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

The Texas Department of Transportation ("TxDOT") appeals a jury verdict in favor of appellee Russell Smithson in which Smithson was awarded damages for injuries sustained in a motorcycle accident. TxDOT contends that Smithson is not entitled to relief because the complained-of road condition was not a special defect and Smithson failed to establish TxDOT had actual knowledge of the condition or, alternatively, Smithson failed to establish how long the condition existed prior to his accident. We reverse.

**BACKGROUND**

On the evening of September 16, 2017, Smithson crashed his motorcycle while making a lane change on State Highway 199 in Lake Worth, Texas. Smithson sustained serious injuries in the accident. He filed suit against TxDOT under the Texas Tort Claims Act (TTCA), alleging that he lost control of his motorcycle due to an "unexpected and abrupt severe and defective height differential between the lanes . . . ."

At trial, Smithson testified that, as he began to move his motorcycle into the left lane, he experienced what he called a "death wobble." He continued, "It violently – it was all I could do to control it up until the point I couldn't control it anymore." He then saw sparks and the headlights of cars behind him, which was his last memory of the incident before he woke up in the ambulance. A few days after the accident, Smithson returned to the scene, where he observed a "drop-off" between the lanes, which he estimated to be "4 inches-ish," along with two potholes. Smithson testified that he did not see the uneven pavement or the potholes on the night of the accident. Jeffrey Milburn, an expert witness for TxDOT, testified that he determined the drop-off was between two and two-and-a-half inches high.

Smithson elicited testimony from a TxDOT employee regarding the presence of red paint on the roadway, which was shown in photographs taken after the accident. Dustin Martin, an assistant maintenance supervisor for TxDOT, testified as follows:

Q: And can you tell me what this red stripe is going down this photograph?

A: Sure. My best guess—and this is a guess—that's where somebody took a spray-paint can and marked, in a sense, the defect?

Q: And was this done after the accident?

A: I have no idea when this was done. That was not done by TxDOT, to the best of my knowledge.

Martin was asked, "Is it more likely than not that somebody from TxDOT would come out there and spray-paint this defect here?" He answered, "No, sir."

The case was tried to a jury, which found both TxDOT and Smithson negligent. The jury assigned 65% fault to TxDOT and 35% to Smithson and awarded $636,336 in damages to Smithson. The trial court entered a judgment awarding Smithson $250,000 in accordance with the TTCA.[1] TxDOT brought this appeal.

## APPLICABLE LAW

Generally, governmental entities retain governmental immunity from suit unless the state consents to the suit. *Fraley v. Tex. A&M Univ. Sys.*, 664 S.W.3d 91, 96 (Tex. 2023). The Texas Tort Claims Act waives governmental immunity for personal injuries caused by a condition of real property. TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021(2), 101.025(a). If a plaintiff's claim arises from a premises defect, then the government's duty is generally limited to "the duty that a private person owes to a licensee on private property." *Id.* at § 101.022(a), (c). That duty is to warn the licensee of a dangerous condition or to make the condition reasonably safe, but only when the owner is aware of the dangerous condition and the licensee is not. *Fraley*, 664 S.W.3d at 98. That is, the plaintiff must prove that the landowner had actual knowledge of the dangerous condition. *Tex. Dep't of Transp. v. York*, 284 S.W.3d 844, 847 (Tex. 2009) (per curiam). For the subset of premises defects considered "special defects," however, the government owes a duty to warn that is the same as a private landowner owes an invitee. *Fraley*, 664 S.W.3d at 96. For a special defect, the duty is to warn of an unreasonable risk of harm

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.023(a) (limiting state government's liability for tort claims to $250,000 per person).

that the premises condition creates when the government owner knows or reasonably should know of the condition. *Id*. at 98. A premises defect claim examines the knowledge of the landowner and the condition of the premises at the time of the alleged injury. *See City of Corsicana v. Stewart*, 249 S.W.3d 412, 413–14 (Tex. 2008) (per curiam).

## ANALYSIS

TxDOT raises two issues on appeal, claiming that (1) the condition is not a special defect and Smithson failed to establish TxDOT's actual knowledge of the condition or, alternatively, (2) even if the condition is a special defect, Smithson failed to establish TxDOT had constructive knowledge of the condition because there is no evidence of how long the condition existed prior to his accident. If, as TxDOT contends, the uneven lane condition was not a special defect, Smithson had to show that TxDOT actually knew of the condition and failed to exercise ordinary care to warn him or make the condition reasonably safe. If, on the other hand, the condition was a special defect, Smithson was required to prove that TxDOT knew or reasonably should have known of the condition. *State Dep't of Highways v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992). Even if we assume that the condition of the roadway constituted a special defect, we must address whether TxDOT had actual or constructive notice of it.[2]

Smithson's Evidence

Smithson asserts that TxDOT had both actual and constructive knowledge of the road defect. He contends that photographs taken after the accident show red paint marks

---

[2] Smithson requested, and the trial court submitted, a jury charge with an invitee standard of care, i.e., the standard associated with a special defect, which allowed the factfinder to find TxDOT negligent if it "knew or reasonably should have known" of the condition. TxDOT objected to the charge and requested that an ordinary premises defect charge, requiring "actual knowledge," be submitted instead.

4

on the roadway, from which the jury could infer that TxDOT knew of the condition before the accident. In his brief, Smithson directs us to the following evidence to support his claim of actual and/or constructive knowledge:

- TxDOT employees patrol roadways and look for defects;[3]

- TxDOT did not put up any kind of warning;

- TxDOT employees testified TxDOT has a duty to be aware of defects on the roadway;

- TxDOT employees testified that TxDOT has red paint and has used it to mark road defects;[4] and

- TxDOT was the only person or entity identified in the case that had red paint.[5]

Smithson further claims that the red paint had faded, indicating that it had been on the roadway for some length of time. He then concludes, "The jury was free to infer that TxDOT put the repaint [sic] down and that it was at a time before the accident."

In reviewing the evidence for legal sufficiency, we consider the evidence in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). Evidence is legally insufficient if the record reveals: (1) the complete absence of a vital fact; (2) the court is

---

[3] Smithson also states that TxDOT employees testified that they could have missed this section of the roadway when conducting patrols, but the portion of the record to which he cites does not reflect such testimony.

[4] A TxDOT employee was asked if he would agree that "at some point after this occurrence, somebody . . . came out there and spray-painted this red line." He responded that it could have been the police officer but that he did not know. He was then asked if he had ever used red spray paint to point out a defect. He testified that he had, but that he did not apply the paint at issue here.

[5] A TxDOT employee testified that the red paint could have been applied by the police officer who worked the accident scene.

barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810.

<u>Actual Knowledge</u>

Actual knowledge is what a party actually knows, as distinguished from constructive or imputed knowledge, which is what a party does not actually know but should know or have reason to know. *Price Constr., Inc. v. Castillo*, 147 S.W.3d 431, 437 (Tex. App.—San Antonio 2004, pet. denied). To prove actual knowledge, Smithson had to show that TxDOT actually knew of a "dangerous condition at the time of the accident." *See Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 117 (Tex. 2010) (per curiam). In making this determination, "courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *University of Tex.-Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008) (per curiam).

Here, although there is no direct evidence that TxDOT actually knew of the uneven lane condition, Smithson contends TxDOT "could have had actual knowledge by putting the red paint down and not timely repairing the road defect." Actual knowledge of a dangerous condition can sometimes be proven through circumstantial evidence. *City of Dallas v. Prado*, 373 S.W.3d 848, 854 (Tex. App.—Dallas 2012, no pet.). However, circumstantial evidence establishes actual knowledge only when it either directly or by reasonable inference supports that conclusion. *City of Corsicana*, 249 S.W.3d at 415. Actual knowledge cannot be established by "piling inference upon inference." *Am. Indus.*

*Life Ins. Co. v. Ruvalcaba*, 64 S.W.3d 126, 142 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *see also Alarcon v. Alcolac Inc.*, 488 S.W.3d 813, 827 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("[I]nferences stacked only on other inferences are not legally sufficient evidence."). Further, a plaintiff cannot rely on circumstantial evidence that supports equally plausible inferences. *See Hancock v. Variyam*, 400 S.W.3d 59, 70–71 (Tex. 2013) (under equal inference rule, factfinder may not reasonably infer ultimate fact from meager circumstantial evidence which could give rise to any number of inferences, none more probable than another); *City of Keller*, 168 S.W.3d at 813 ("When the circumstances are equally consistent with either of two facts, neither fact may be inferred.").

To connect the dots leading to TxDOT's actual knowledge, Smithson had to establish both that TxDOT applied the red paint for the purpose of marking the defect and that TxDOT applied the paint sometime before Smithson's accident. Smithson did not produce any direct evidence of who applied the paint or when they applied it. Instead, he presented circumstantial evidence that the paint could have originated from a TxDOT employee and that TxDOT therefore could have applied it. There are other possible sources of the red paint, and Smithson has not offered evidence that an inference that TxDOT applied the paint is more probable than other possible inferences. *See, e.g., City of Houston v. Ayala*, 628 S.W.3d 615, 624 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (evidence insufficient to raise fact issue on actual knowledge where plaintiff inferred that soap on floor came from airport custodian because custodians have soap in their cleaning kits, and inferred that if custodian spilled soap, city actually knew about condition); *see also Suarez v. City of Texas City*, 465 S.W.3d 623, 634 (Tex. 2015) ("An inference is not

7

reasonable if it is susceptible to multiple, equally probable inferences, requiring the factfinder to guess in order to reach a conclusion."). Such an inference would "violate[] the equal inference rule, which provides that a jury may not reasonably infer an ultimate fact from 'meager circumstantial evidence which could give rise to any number of inferences, none more probable than another.'" *See Hancock*, 400 S.W.3d at 70–71.

Additionally, Smithson did not produce any evidence that the paint was applied before his accident. He states in his brief, "The red paint has faded that indicates that it had been there for some length of time [sic]." However, he directs us to no testimony that the paint had faded but rather points to photographs taken at some point after the accident and cites to his own argument at the hearing on TxDOT's motion for judgment notwithstanding the verdict. Smithson presented no temporal evidence, from any source, regarding how long the paint had been on the roadway. Thus, the conclusion that TxDOT applied the paint before Smithson's accident is an improper inference. *See Suarez*, 465 S.W.3d at 634.

The mere presence of red paint marking the road condition, without more, is not evidence that TxDOT applied the paint. *See, e.g., Durham v. Wal-Mart Stores, Inc.*, No. 14-02-00469-CV, 2003 Tex. App. LEXIS 1923, at *5 (Tex. App.—Houston [14th Dist.] Mar. 6, 2003, no pet.) (mem. op.) (existence of sheet of plexiglass on store floor was not evidence that store employee placed plexiglass there). Likewise, the mere presence of red paint marking the road condition is not evidence that the paint was applied prior to Smithson's accident. *See id.* at *5–6 (plaintiff put forth no evidence of how long plexiglass had been on floor). Considering the evidence in the light most favorable to Smithson, we

conclude that there is no evidence to support the conclusion that TxDOT had actual notice of the dangerous condition.

Constructive Knowledge

When a plaintiff relies on circumstantial evidence to prove constructive knowledge, the evidence must show it is more likely than not that the defect existed long enough to be discovered through reasonable inspection. *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998). Evidence showing only the possibility that the defect existed long enough to be discovered is insufficient to prove constructive knowledge. *Id.* at 936, 938.

To show that TxDOT had constructive knowledge of the defect, Smithson appears to rely on the "time-notice rule." To impute constructive knowledge to a premises owner, the time-notice rule requires some evidence of the length of time the unreasonably dangerous condition existed prior to the injury-causing event. *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 816 (Tex. 2002). More specifically, "there must be some proof of how long the hazard was there before liability can be imposed on the premises owner for failing to discovery and rectify, or warn of, the dangerous condition." *Id.* at 816.

Smithson did not provide any temporal evidence showing how long the uneven lane condition had existed or supporting the assertion that there was a reasonable opportunity for TxDOT to discover the condition. Nothing in the record indicates that anyone was aware of the uneven lanes before Smithson's accident and nothing indicates when the condition arose. *See Gonzalez*, 968 S.W.2d at 937–38 (holding evidence legally insufficient to establish constructive knowledge when witnesses had not seen macaroni salad prior to plaintiff's fall and had no personal knowledge of length of time

9

substance had been on floor).  Considering the evidence in the light most favorable to Smithson, we conclude that there is no evidence to support the conclusion that TxDOT had constructive notice of the dangerous condition.

## CONCLUSION

We conclude that the evidence is legally insufficient to show that TxDOT had actual or constructive knowledge of the condition that caused Smithson's accident.  Accordingly, we reverse the judgment of the trial court and render judgment that Smithson take nothing by his claims.  *See Tex. Dep't of Transp. v. York*, 284 S.W.3d 844, 848 (Tex. 2009) (per curiam).


Judy C. Parker
Justice