Opinion issued February 17, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00613-CV

———————————

SLT Dealer Group, Ltd. dba Alliance Chevrolet, Appellant

V.

Americredit
Financial Services, INC., Appellee



 



 

On Appeal from the 334th District Court

Harris County, Texas



Trial Court Case No. 2008-41513

 



 

O P I N I O N

This is a
breach of contract case.  The defendant,
SLT Dealer Group, LTD d/b/a Alliance Chevrolet (“Alliance”) appeals a final summary
judgment granted in favor of the plaintiff, AmeriCredit Financial Services
(“AmeriCredit”).  We affirm the trial
court’s judgment.   

BACKGROUND

Alliance is an automobile dealer
that offers financing to its customers. 
When Alliance sells a vehicle under an installment agreement permitting
the buyer to make payments over time, Alliance in turn sells that financing
contract to a third party.  AmeriCredit
is an automobile financing company that purchases these types of individual consumer
automobile financing contracts from automotive dealers.  

A.   The Dealer Agreement

On March 24, 2006, Alliance and
AmeriCredit entered into a “Dealer Agreement” providing the terms under which
AmeriCredit would buy retail installment contracts from Alliance.  The dispute here involves transactions
arising under this Dealer Agreement.

In the Dealer Agreement, Alliance
made certain representations about each installment contract to be sold to
AmeriCredit under the agreement.  These are
contained in a section entitled “REPRESENTATIONS, WARRANTIES, AND COVENANTS OF
DEALER WITH RESPECT TO EACH CONTRACT,” and include:

The Contract and the Contract Documents will
represent a genuine obligation of the Buyer named therein, will be legitimate,
valid and binding in accordance with their terms, will be enforceable by
AMERICREDIT and its assigned, are free from fraud, and will be subject to no
defenses, claims misrepresentations, setoffs or counterclaims of any kind . . .
. 

 

 

The vehicle was sold for the personal use and
benefit of the Buyer.

 

. . . .

 

No employees or other representatives of Dealer has
made any statement or representation to Buyer which conflicts with any terms or
provisions contained in the Contract.

 

. . . .

 

At the time of the Contract signing Dealer will
complete all forms and documents necessary to perfect a valid and enforceable
security interest of AMERICREDIT in the vehicle as required by applicable law
and forward and file such forms and documents, together with the appropriate
fees, with the public officials responsible for issuing the certificate of
title or registration to the vehicle within the earlier of (i) the state law
time frame for perfection of AMERICREDIT’s security interest in the vehicle, or
(ii) twenty (20) days from the date of the Contract.

 

. . . .

 

The Contract Documents will represent the entire
agreement between Dealer and the Buyer with respect thereto and the Contract
Documents will not have been modified, superseded, or waived by any act or
omission of Dealer.  

 

B.  
The
Wallace Contract

 

On October
4, 2008, Alliance and Gladys Wallace executed a Motor Vehicle Installment Sales
Contract (“Wallace Contract”) for the purchase of a 2003 BMW 745I (“Wallace
Vehicle”).  Under the Dealer Agreement,
Alliance assigned the Wallace Contract to AmeriCredit and received a check for
$56,142.83.  As part of this transaction,
Alliance sent documents to AmeriCredit that it represented were Wallace’s
credit application and tax returns. 

After
Wallace failed to make her first payment on the car, AmeriCredit investigated
and discovered irregularities in the transaction and that the underlying documentation
contained false information.  Wallace had
never visited Alliance’s dealership. 
Victor Holmes, one of Alliance’s employees, had Wallace sign the Wallace
Contract at her home.  In exchange for
Wallace’s signature on the contract, Holmes paid Wallace $500 cash and
represented that she would never have to make a payment on the vehicle.  Wallace’s understanding was that this was an
“investment” opportunity, that she was listed as the owner on the contract only
“because of [her] credit,” and that the car would be sold to someone else
within 30 days.  She never took
possession of the car and denied having ever seen the credit application that
Alliance submitted to AmeriCredit containing false information about her
occupation and income. 

Alliance
also failed to disclose to AmeriCredit that Alliance secured financing for
several other vehicles in Wallace’s name. 
Holmes was ultimately fired by Alliance for a number of improprieties,
including his involvement in the Wallace deal. 
          

On March 26,
2007, AmeriCredit made a written demand for Alliance to repurchase the Wallace
Contract.  As support, AmeriCredit relied
upon the provisions in the Dealer Agreement in which Alliance represented that all
financing contracts assigned under the agreement would be “legitimate, valid
and binding . . . and free from fraud,” and in which Alliance agreed to
repurchase any contract if its obligations were breached.  Alliance did not repurchase the Wallace
contract. 

On April
12, 2007, a mechanic’s lien securing the cost of significant repairs was placed
on the Wallace Vehicle by an unrelated third-party.  On May 17, 2007, following foreclosure on the
mechanic’s lien, the Wallace Vehicle was auctioned off and sold to a new owner
who is not a party to these proceedings for $2,000.   

C.  
The Garcia, Burditt, and Morton Contracts    

Between
June 5 and June 11, 2007, in conjunction with the sale of three other vehicles,
Alliance executed three other installment sales contracts: one with Adolfo
Garcia (“Garcia Contract”), one with Tammie Burditt (“Burditt Contract”), and
one with Monique Morton (“Morton Contract”). 
The Garcia, Burditt, and Morton Contracts were assigned to AmeriCredit
under the Dealer Agreement.  After
Alliance failed to repurchase the Wallace Contract, AmeriCredit exercised its
right under the Dealer Agreement to offset $57,509.40 owed it for Alliance’s repurchase
of that contract against funds AmeriCredit owed Alliance for the Garcia,
Burditt, and Morton Contracts.  Because
this offset satisfied Alliance’s repurchase obligation with regard to the
Wallace Contract, on July 13, 2007, AmeriCredit sent Alliance the original
Wallace Contract, the title to the Wallace Vehicle, and an Assignment without
Recourse Form.   

After
AmeriCredit notified Alliance about its offset against payment owed for the
Garcia, Burditt, and Morton Contracts, Alliance executed new contracts with
Garcia, Burditt, and Morton.  Alliance
then sold these new contracts to different finance companies (other than
AmeriCredit) and arranged for the Garcia, Burditt, and Morton vehicles to be
titled with perfected security interests in favor of lenders or finance
companies other than AmeriCredit.  On
February 19, 2008, AmeriCredit demanded that Alliance repurchase the Garcia,
Burditt, and Morton Contracts because Alliance had failed to perfect security
interests on the underlying vehicles in AmeriCredit’s favor.  Alliance refused.  On July 10, 2008, AmeriCredit sued Alliance
for breach of contract, asserting that Alliance’s assigning the new Garcia,
Burditt, and Morton contracts to other companies—while refusing to repurchase the Garcia, Burditt, and Morton Contracts it
previously assigned to AmeriCredit—violated the Dealer Agreement.    

D.   The Underlying Proceedings

Following the
close of discovery, AmeriCredit moved for summary judgment on its breach-of-contract
claim and claim for attorney’s fees.  In
response, Alliance amended its answer to add the assertion that “not all
conditions precedent to maintaining this suit have been met by Plaintiff.”  Alliance then filed a response to
AmeriCredit’s motion for summary judgment, asserting genuine issues of material
fact exist concerning (1) whether Alliance breached the Dealer Agreement
because AmeriCredit “violated its own policies” with regard to pursuing
repossession of the Wallace Vehicle, and (2) whether conditions precedent
concerning assignment of the Garcia, Burditt, and Morton Contracts occurred
since security interests were never perfected on those vehicles in favor of
AmeriCredit.  

On April 3,
2009, the trial court granted a final summary judgment in AmeriCredit’s favor,
awarding $57,509.40 in actual damages and $16,066.00 in attorney’s fees.  On April 15, 2009, AmeriCredit filed a motion
to modify the judgment to add an award of conditional appellate attorney’s fees
that were proven up and uncontroverted in the summary judgment briefing.  On May 12, 2009, AmeriCredit filed an amended
motion to modify the judgment requesting the same relief as in its earlier
motion and expanding on its earlier arguments. 
On June 1, 2009, the trial court signed an order granting AmeriCredit’s
motion to modify.    That same day, the
trial court signed an amended final summary judgment, adding the requested conditional
award of appellate attorney’s fees.   

Alliance
perfected its appeal of the June 1, 2009 judgment on July 1, 2009.    On
July 20, 2009, AmeriCredit filed a motion to amend the judgment nunc pro tunc,
requesting the court’s award of “$4,00.00” for an appeal to the Court of Appeal
. . . .” be changed to “$4,000.00 for an appeal to the Court of Appeals . . .
.” to conform to the requested relief and supporting evidence.  On July 30, 2009, the trial court signed an
order granting AmeriCredit’s motion and, on August 20, 2009, signed the new
judgment nunc pro tunc. 

ANALYSIS

   Alliance raises four arguments on appeal.  In its first two points, it argues that
summary judgment was inappropriate because fact issues exist concerning 
(1) “whether AmeriCredit’s disposition of the collateral in the Wallace
Contract was commercially reasonable,” and (2) “whether the conditions
precedent to the Garcia, Burditt, and Morton contracts occurred.”  In its third point, it argues that the trial
court’s “order granting [AmeriCredit’s] First Amended Motion to Modify is a
nullity because it violates the rule prohibiting more than one final judgment.”    Finally, in its fourth point, Alliance argues
that the trial court’s “two judgments nunc pro tunc are void because they
attempt to correct a judicial error rather than a clerical error.”[1]  Finding no error in the trial court’s
judgment, we affirm.

Summary
Judgment

A.  
Standard of Review

To prevail
on a Rule 166a(c) summary-judgment motion, a movant must prove that there is no
genuine issue regarding any material fact and that it is entitled to judgment
as a matter of law. See Tex. R. Civ. P. 166a(c); Little v. Tex. Dep’t of Criminal Justice,
148 S.W.3d 374, 381 (Tex. 2004). A plaintiff moving for summary judgment must
conclusively prove all essential elements of its claim. See Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999).
A matter is conclusively established if reasonable people could not differ as
to the conclusion to be drawn from the evidence. See City of Keller v. Wilson, 168 S.W.3d 802, 816 (Tex. 2005).  

If the
movant meets its burden, the burden then shifts to the nonmovant to raise a
genuine issue of material fact precluding summary judgment. See Centeq Realty, Inc. v. Siegler, 899
S.W.2d 195, 197 (Tex. 1995). The evidence raises a genuine issue of fact if
reasonable and fair-minded jurors could differ in their conclusions in light of
all of the summary-judgment evidence.   Goodyear Tire & Rubber Co. v. Mayes,
236 S.W.3d 754, 755 (Tex. 2007).

On appeal,
we review de novo a trial court’s summary judgment ruling. See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289
S.W.3d 844, 848 (Tex. 2009).  We consider
all the evidence in the light most favorable to the nonmovant, crediting
evidence favorable to the nonmovant if reasonable jurors could, and
disregarding contrary evidence unless reasonable jurors could not. See Mack Trucks, Inc. v. Tamez, 206
S.W.3d 572, 582 (Tex. 2006).

B.   Breach of Contract

Alliance
asserts that the trial court erred in granting AmeriCredit’s motion for summary
judgment on AmeriCredit’s breach-of-contract claim.  To be entitled to summary judgment on this
claim, AmeriCredit was required to prove, as a matter of law, the following
essential elements: (1) the existence of a valid contract; (2) performance or
tendered performance by the plaintiff; (3) breach of the contract by the
defendant; and (4) damages sustained as a result of the breach. See B & W Supply, Inc. v. Beckman, 305
S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Contracts
should be construed by giving effect to the parties’ intent as expressed in the
written instrument.  Lenape Res. Corp. v. Tenn. Gas Pipeline Co., 925 S.W.2d 565, 574
(Tex. 1996).  “The contract must be read
as a whole, rather than by isolating a certain phrase sentence, or section of
the agreement.” Baty v ProTech Ins.
Agency, 63 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2002, pet.
denied) (citing State Farm Life Ins. Co.
v. Beaston, 907 S.W.2d 430, 433 (Tex. 1995)).  Contract language is given its plain
grammatical meaning unless doing so would defeat the parties’ intent.  DeWitt
Cnty. Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 101 (Tex. 1999).         

In its
first point of error, Alliance contents that “AmeriCredit permitted the Wallace
vehicle to be sold pursuant to the mechanics lien and failed to obtain any
value for the Wallace vehicle.”  Thus,
according to Alliance, “[g]enuine issues of material fact exist concerning whether
Americredit’s actions were commercially reasonable.”  In support, Alliance cites the Texas Business
and Commercial Code provisions governing disposition of collateral:

Every aspect of a disposition of collateral,
including the method, manner, time, place, and other terms, must be
commercially reasonable.  If commercially
reasonable, a secured party may dispose of collateral by public or private
proceedings, by one or more contracts, as a unit or in parcels, and at any time
and place and on any terms.

 

Tex.
Bus. & Com. Code Ann. § 9.610(b)
(Vernon 2002).  Because the liability of
a debtor or secondary obligor may be reduced if collateral is not disposed of
in a commercially reasonable manner, id.
§ 9.626, Alliance argues that
AmeriCredit’s failure to provide evidence that “disposition of the Wallace
vehicle was a sincere effort to obtain a full market value for the collateral”
rendered summary judgment on its breach-of-contract claim inappropriate.    

  In response, AmeriCredit contends that the
law mandating commercially reasonable disposition of collateral is inapplicable
because that duty is triggered only when the secured party has taken possession
of its collateral and intends to obtain a deficiency judgment against the maker
of a note.  See id. § 9.610.  AmeriCredit further points out that the duty
to prove the commercial reasonableness of a sale does not arise unless the
debtor specifically denies the commercial reasonableness in its answer, which
Alliance did not do here.  See Greathouse v. Charter Nat’l Bank-Sw,
851 S.W.2d 173, 176-77 (Tex. 1992).

We agree with
AmeriCredit that the duty to prove commercial reasonableness never came into
play because AmeriCredit did not repossess or dispose of the Wallace
Vehicle.  The record reflects that an
unrelated third-party placed a mechanic’s lien on the vehicle to secure cost of
repairs.  Alliance complains that
Americredit received notice of this mechanic’s lien and “failed to do anything
to protect or recover its collateral.”  In
other words, Alliance concedes that AmeriCredit did not possess or dispose of
the collateral, but protests that AmeriCredit should have been more aggressive
in repossessing the vehicle.    Alliance
cites no authority, and we have located none, applying section 9.610’s duty of
commercial reasonableness to a creditor who does not possess or dispose of
collateral.  We overrule Alliance’s first
point.

Alliance
next argues that there “are genuine issues of material fact concerning whether
the conditions precedent were met concerning the Garcia, Burditt, and Morton”
Contracts.  In support, Alliance cites a
section in the Dealer Agreement entitled “Conditions Precedent to Sale and Purchase
of Contracts” that includes, as one condition precedent: “The security interest
and liens granted under this Agreement and Contracts have been properly
perfected in favor of AmeriCredit.”  The
record reflects that, after assigning the Garcia, Burditt and Morton Contracts
to AmeriCredit, rather than securing liens on the associated vehicles in favor
of AmeriCredit, Alliance entered new contracts with lenders other than
AmeriCredit and secured liens on these vehicles in their favor of lenders other
than AmeriCredit.  According to Alliance,
its own failure to perfect the security interests in AmeriCredit’s favor with
respect to the Garcia, Burditt, and Morton vehicles renders the entire Dealer
Agreement inapplicable and therefore not subject to breach.

In
response, AmeriCredit insists the Dealer Agreement must be looked at as a
whole, arguing that it “is clear, from a plain reading of the entire contract,
that the ‘condition precedent’ as set forth in . . . the Dealer Agreement is an
obligation on the part of Alliance to perfect AmeriCredit’s security interest
in a vehicle described in the retail installment contract that AmeriCredit
purchases from Alliance.”  AmeriCredit urges
us to reject Alliance’s “circular reasoning” that would permit Alliance’s
failure to perform its own obligations to bar AmeriCredit’s breach-of-contract
claim against Alliance.  In support of
its argument that the Dealer Agreement, taken as a whole, cannot be read to mandate
perfection of a security interest as a prerequisite to a binding contract, AmeriCredit
points us to the sections of the contract dealing specifically with the timing
of perfecting security interests and AmeriCredit’s available remedies if
Alliance fails to timely perfect an interest in AmeriCredit’s favor:

At the time of the Contract signing, Dealer will
complete all forms and documents necessary to perfect a valid and enforceable
security interest of AMERICREDIT in the vehicle as required by applicable law
and forward and file such forms and documents, together with the appropriate
fees, with the public officials responsible for issuing the certificate of
title of registration to the vehicle within the earlier of (i) the state law
time frame for perfection of AMERICREDIT’S security interest in the vehicle, or
(ii) twenty (20) days from the date of the Contract . . .

. . . .

 

Dealer warrants that the security interests and lien
of AMERICREDIT for each contract purchased by AMERICREDIT shall be completed
within twenty (20) days of Buyer’s date of purchase.  Failure of the dealer to perfect and transfer
title reflecting AMERICREDIT’S security interest and lien within this time
period will subject the contract to repurchase . . . 

 

Conditions
precedent may be either a condition to the formation of a contract or an
obligation to perform an existing agreement. 
Hohenberg Bros. Co. v. George E.
Gibbons & Co., 537 S.W.2d 1, 3 (Tex. 1976).  “[W]hen the intent of the parties is doubtful
or when a condition would create an absurd or impossible result, courts should
interpret agreements as creating covenants and not conditions.”  Sheldon
L. Pollack Corp. v. Falcon Indus., Inc., 794 S.W.2d 380, 383 (Tex.
App.—Corpus Christi 1990, writ denied) (citing Hohenberg Bros. Co., 537 S.W.2d at 3)).  Interpreting a clause as a condition
precedent leading to forfeiture should be avoided when another reasonable
reading of a contract exists.  Reilly v. Rangers Mgmt., Inc., 727
S.W.2d 527, 530 (Tex. 1987).

Irrespective
of the section subtitle “Condition Precedent,” the requirement that Alliance perfect
a security interest in AmeriCredit’s favor—read in conjunction with the rest of the provisions dealing with timing
of the perfection of security interest—is a covenant, not a condition. 
The Dealer Agreement contains Alliance’s warranty that security
interests “for each Contract purchased by Americredit shall be completed
within” 20 days of the vehicle buyer’s purchase.  And the agreement specifically provided that,
if Alliance fails to transfer title and perfect a security interest “within
this time period,” AmeriCredit can require Alliance to repurchase the contract.  These provisions contemplate AmeriCredit’s
purchase of the contract before the
title is transferred and the security interest is perfected, or AmeriCredit’s
repurchase option would be meaningless. 
In other words, if the contract mandated perfection of the lien as a
prerequisite to AmeriCredit’s purchase of the contracts, then the option to
compel Alliance’s repurchase for failure to timely perfect such interest (which
necessarily contemplates a sale from Alliance to AmeriCredit has already taken
place) could never be invoked.  

Alliance
urges us to reconcile these various provisions by holding that if a security
interest is perfected in AmeriCredit’s favor, but not within 20 days,
AmeriCredit has the right to demand Alliance repurchase the contract.  But, if instead Alliance never perfects the security interest in AmeriCredit’s favor—as happened in this case—AmeriCredit cannot compel Alliance’s
repurchase. 

Here,
AmeriCredit accepted assignment of the Garcia, Burditt, and Morton Contracts.  As permitted by the Dealer Agreement,
AmeriCredit paid Alliance for those contracts by offsetting the amount owed on
the Wallace Contract and tendering the Wallace Contract and title back to
Alliance as repurchased.  Alliance then
perfected a security interests in the Garcia, Burditt, and Morton vehicles in
favor of companies other than AmeriCredit so that AmeriCredit had no ability to
receive installment contract payments from Garcia, Burditt, and Morton.  Under Alliance’s interpretation, if Alliance’s
performance had been untimely, AmeriCredit could demand repurchase, but because
Alliance never performed, AmeriCredit is without recourse.  We reject this interpretation as it “plainly
violate[s] the intent of the parties and would lead to an absurd result, in
clear violation of the rules of contract construction.”  Henry
v. Masson, __ S.W.3d __, No. 01-07-00522-CV, 2010 WL 5395640, at *18 (Tex.
App.—Houston [1st Dist.] Dec. 30, 2010, no pet.).   

While
Alliance seeks to avoid its own obligations to perform under the Dealer
Agreement by relying on its own failure to perfect a security interest in
AmeriCredit’s favor, it notably cites no cases holding that a party’s failure
to perform a condition precedent excuses that own party’s obligations.  As a general rule, “one who prevents or makes
impossible the performance of a condition precedent upon which his liability
under a contract is made to depend cannot avail himself of its
nonperformance.”  II Dearfield Ltd. P’ship v. Henry Bldg. Inc., 41 S.W.3d 259, 265
(Tex. App.—San Antonio 2001, pet. denied). 
We overrule Alliance’s second point of error.

Amended
Judgment

In his
third point of error, Alliance argues that the trial court’s “order granting
the First Amended Motion to Modify is a nullity because it violates the rule
prohibiting more than one final judgment.” 
See Tex. R. Civ. P. 301 (“Only one final judgment shall be
rendered in any cause except where it is otherwise specifically provided by
law.”).  Alliance acknowledges that a
trial court can modify a final judgment while it retains plenary power, but asserts
that the “entry of a second judgment in the same case does not automatically
vacate the first judgment, and if there is nothing in the record to show that
the first judgment was vacated, the second judgment is a nullity.”  Exxon
Corp. v. Garza, 981 S.W.2d 415, 419 (Tex. App.—San Antonio 1998, pet.
denied); see also Thompson v. Ballard,
149 S.W.3d 161, 166 (Tex. App.—Tyler 2004, no pet.).  

AmeriCredit
agrees that there can be but one final judgment, but argues that “as long as
the court has plenary power over a judgment, it is not technically final,” Woolsley v. Smith, 925 S.W.2d 84, 86-87
(Tex. App.—San Antonio 1996, no pet.), and, during that period, the trial court
may “modify, correct, or reform the judgment.” 
Tex. R. Civ. P. 329b(e).  AmeriCredit also contends that the cases
cited by Alliance are inapplicable because they do not involve situations in
which, as here, a new judgment is entered in response to a party’s motion
modify, correct, or reform a judgment.         

The trial
court signed the Final Summary Judgment on April 3, 2009.  On April 15, 2009, within the court’s plenary
power, AmeriCredit filed a motion to modify that judgment requesting the
addition of an award of appellate attorney’s fees.  Tex.
R. Civ. P. 329b(a) (“A motion for new trial, if filed, shall be filed
prior to or within thirty days after the judgment or other order complained of
is signed.”)  The trial court’s order
granting that motion to modify and the court’s First Amended Final Summary
Judgment were both signed June 1, 2009, which was 59 days after the original judgment was signed and well
within the court’s plenary power that had been extended by the filing of
AmeriCredit’s motion to modify the judgment. 
Tex. R. Civ. P.
329b(c),(e).    

AmeriCredit’s
motion to modify complained that judgment was entered “without recitation of an
award of appellate attorney’s fees against Defendant.”  In that motion, AmeriCredit directed the court
to the uncontroverted summary judgment evidence supporting the award of such
fees, and requested entry of an amended judgment that included such an
award.  On May 21, 2009, the trial court
signed an order reciting that the judgment “will be modified to include an
award of appellate attorney’s fees.”  On
June 1, 2009, the court signed the new judgment, entitled “First Amended Final
Summary Judgment,” which contained substantively all the same terms from the
April 4, 2009 judgment and added an award of attorney’s fees.    

This second
judgment is not a nullity.  “Any change in
a judgment made during the trial court’s plenary power is treated as a modified
or reformed judgment that implicitly vacates and supersedes the prior judgment,
unless the record indicates a contrary intent.” Price Constr., Inc. v. Castillo, 147 S.W.3d 431, 441 (Tex. App.—San
Antonio 2004), pet. denied, 209 S.W.3d 90 (Tex. 2005); see also Quanaim v. Frasco Rest. &
Catering, 17 S.W.3d 30, 39 (Tex. App.—Houston [14th Dist.] 2000, pet.
denied) (inferring from entry of modified judgment during trial court’s plenary
power that court intended prior judgment be vacated).  Nothing in the record indicates the trial
court did not intend that its second judgment supersede the first.  And the language of the trial court’s May 21,
2009 order granting the motion to modify (stating judgment “will be modified”),
taken together with the inclusion of the word “Amended” in the title of the
second judgment, indicates the trial court’s intent that the second judgment replace
the first.  Cf. City of West Lake Hills v. State, 466 S.W.2d 722, 726-27 (Tex.
1971) (including “Corrected” in title of second judgment entered during trial
court’s plenary power indicated court’s intent that second judgment replace
earlier entered judgment).  We overrule
Alliance’s third point.

Judgment Nunc
Pro Tunc

In its
fourth point, Alliance argues that the trial court’s August 20, 2009 “First
Amended Final Summary Judgment nunc pro tunc” is void because it was entered
after the court’s plenary power expired and corrected a judicial error—not a clerical one.  AmeriCredit responds that the August 20, 2009
nunc pro tunc judgment merely corrected a typographical error, which is the
type of clerical error a court may correct anytime, even after its plenary
power has expired.    

The
uncontroverted attorney’s fees affidavit in support of AmeriCredit’s motion for
summary judgment stated, in part, that a reasonable fee for appellate
representation of AmeriCredit would be “$4,000.00 for an appeal to the Court of
Appeals.”  The trial court’s June 1, 2009
First Amended Final Summary Judgment contained a conditional award of
attorney’s fees of “$4,00.00 for an appeal to the Court of Appeals.”  AmeriCredit’s motion to amend judgment nunc
pro tunc requested the trial court change the amount of awarded conditional
appellate attorney’s fees from “$4,00.00” to “$4,000.00.”  The trial court granted the motion and signed
a judgment nunc pro tunc reflecting this change.    

The court
can correct a clerical error in the judgment at any time, even after it loses plenary
power over the judgment.  Tex. R. Civ. P. 316.  A clerical error is a mistake that prevents the
judgment, as entered, from accurately reflecting the judgment as actually
rendered.  Universal Underwriters Ins. Co. v. Ferguson, 471 S.W.2d 28, 29-30 (Tex.
1971).  In contrast, a judicial error
arises from a mistake of law or fact that requires judicial reasoning or
determination to correct.  Butler v. Cont’l Airlines, Inc., 31
S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).  Determining whether the error is judicial or
clerical is a question of law.  Escobar v. Escobar, 711 S.W.2d 230, 232 (Tex.
1986).  

The trial
court’s judgment contained an award of attorney’s fees of “$4,00.00,” which is
not a legitimate dollar figure.  The only
evidence concerning appellate fees before the court when the judgment was
signed supports the inference that the judgment the court intended to enter was
for “4,000.00.”  This Court has
previously found a substantively identical error to be clerical.  Fiske v.
Fiske, No. 01-03-00048-CV, 2004 WL 1847368, at *5 (Tex. App. Houston [1st
Dist.] Aug. 19, 2004, no pet.) (mem. op.) (nunc pro tunc judgment changing
award from “$50,00.00” to “50,000.00” corrected clerical error).  We overrule Alliance’s fourth point of error.

CONCLUSION

We affirm
the trial court’s judgment.              

      

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Alcala and Bland.

 











[1]
          Although Alliance references
“two judgments nunc pro tunc,” there is only one judgment nunc pro tunc—the one signed August
20, 2009.  The July 30, 2009 order
Alliance refers to as another judgment nunc pro tunc was the court’s order
granting the motion for judgment nunc pro tunc.