

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00469-CV

———————————————

JERRI LYNN KIRKLAND, Appellant

V.

JAMES CALVIN KIRKLAND, Appellee

On Appeal from the 352nd District Court
Tarrant County, Texas
Trial Court No. 352-329598-21

Before Kerr, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. Introduction

Appellant Jerri Lynn Kirkland appeals from a November 8, 2022 amended order partially granting temporary injunctive relief that enjoins her from, among other things, acting as trustee of the Kirkland Living Trust and "taking any action to oppose, challenge, interfere with, or further delay the issuance of letters testamentary" to Appellee Calvin Kirkland. Jerri raises four issues. In her first issue, she argues that the November 8, 2022 order is void for failing to strictly comply with Texas Rule of Civil Procedure 683's mandatory requirements. In her remaining issues, she argues that the trial court abused its discretion by rendering the November 8, 2022 order because it grants the ultimate relief that Calvin seeks in the underlying suit, because Calvin failed to satisfy his burden of proving an actual threat of an imminent and irreparable injury for which he lacks an adequate remedy at law, and because the order purports to limit her from participating in the probate proceeding for the Estate of Benny Dale Kirkland that remains pending in Hood County. We hold (1) that the November 8, 2022 order was superseded by the March 14, 2023 order and that the subsequent order complied with Rule 683's mandatory requirements; (2) that the March 14, 2023 order does not grant the ultimate relief that Calvin seeks because his pleadings asserted a breach-of-contract cause of action and requested numerous declarations that are not mentioned in the temporary-injunction order; (3) that Calvin proved an actual threat of imminent and irreparable injury for which he lacks an

adequate remedy at law; and (4) that the order's anti-suit injunction was inappropriate. Accordingly, we modify the March 14, 2023 order to delete the portion that enjoins Jerri from taking any action in the probate proceeding to delay the issuance of the letters testamentary, and we affirm the order as modified.

## II. Factual and Procedural Background

Although this is an interlocutory appeal from the temporary-injunction order, documents other than Calvin's application for the temporary injunction impact the analysis. To assist the reader, we explain the people involved, the various documents at play, the underlying suit, Jerri's deposition, and the hearing on the temporary-injunction application.

### A. The People Involved

Jerri was married to Benny Dale Kirkland for the six years preceding his death. Jerri had a son and a daughter (Eric Bradley Hardaway and Jacey Lynn Hardaway) from a prior marriage, and Benny had a daughter and a son (Kristin Leigh Tindal and James Calvin Kirkland) from his prior marriage.

### B. The Premarital Agreement

Prior to Jerri and Benny's marriage, they signed a premarital agreement in March 2015 with property schedules attached, confirming that Jerri's separate property consisted of a 1999 Lexus valued at $4,000; jewelry and clothing valued at $6,000; and a life insurance policy on her ex-husband with a $50,000 death benefit

3

payable to Jerri, while Benny's separate property totaled over $3 million. The parties reaffirmed the premarital agreement in June 2015.

## C.    The Trust and the Restated Amendment

In February 2020, after Jerri and Benny were married, they created and executed a revocable inter vivos trust known as the Kirkland Living Trust. Three months later, Jerri and Benny executed a "Restated Amendment to The Kirkland Living Trust." Article I of the document states that Jerri "does herewith resign as [t]rustee." The Restated Amendment lists the successor trustees in the following order of priority: Benny's son, son-in-law, and daughter—i.e., Calvin Kirkland, Everett Alan Tindal, and Kristin Tindal. The Restated Amendment limited who could be appointed as trustee upon the first death (as between Jerri and Benny):

> 3.A.  **Successor Trustees.** We may, during our joint lifetimes, appoint individuals or corporations as co-Trustees or successor Trustees, by a written instrument other than a Will delivered to the other Trustee(s), if any are then-acting. Upon the death of the first of us, the survivor may appoint, by the same method, individuals or corporation as co-Trustees or successor Trustees; *provided however, if a Trustee or co-Trustee is acting who is not related or subordinate to the survivor of us . . . , the power to remove and replace such a Trustee shall be limited to the appointment of a new Trustee or new co-Trustee who is also not related or subordinate to the survivor of us . . . .* If the survivor of us is incapacitated, the person who has been nominated to serve as successor Trustee may designate his or her successor, if there is no named successor to that successor Trustee or if the person designated as his or her successor is unable or unwilling to serve. [Emphasis added in italics.]

Because Calvin was listed as the first successor trustee, the surviving spouse (Jerri) was thus limited to removing and replacing Calvin with someone who was not related

4

to her.  The Restated Amendment also limited what provisions of the trust could be amended by the surviving spouse:

5.C.  **Revocation and Amendment after the First Death.**

(1)  *On the death of the first of us, the surviving spouse may amend any or all of the provisions of Articles II, III[,] or IV of this Trust* [except as such amendment would alter the beneficial interests of the "Decedent's Trust" (as hereinafter defined)[ or] cause the loss of the marital deduction for all or any part of the Decedent's Trust].

(2)  On the death of the first of us, the surviving spouse shall have the power to amend, revoke[,] or terminate the "Survivor's Trust" (as hereinafter defined).  On revocation or termination of the Survivor's Trust, all of its assets shall be delivered to the surviving spouse.

(3)  On the death of the first of us, the "Decedent's Trust" (as hereinafter defined) may not be amended, revoked, or terminated; provided however, the surviving spouse shall have the power to change the manner of distribution, whether outright or continued in trust, of the Decedent's Trust to the deceased spouse's issue. This Limited Power of Appointment shall include the power to allocate all or an unequal portion of the assets of the Decedent's Trust to one or more beneficiaries to the exclusion of the deceased spouse's other issue, so long as such beneficiaries are the issue of the deceased spouse.

(4)  Revocation and amendment shall be made in the manner as herein above provided in Paragraphs 5.A. and 5.B.

(5)  On the death of the surviving spouse, no trust created herein may be amended or revoked.  [Emphasis added in italics.]

And in thirteen separate subparts, several with further subdivisions, the Restated Amendment set forth in detail how the trust estate would be divided upon the death of the first spouse, including the creation of the Survivor's Trust and the Decedent's

5

Trust, the funding for each of those trusts, and the disposition of the liquid assets currently held by Stifel Investments and the business interests owned by Benny at the time of his death. "Schedule 'A' of The Kirkland Living Trust," which is dated February 27, 2020, sets forth the initial trust funding, including real property located in Granbury and New Mexico and "[a]ll interest" in seven named glass companies. The schedule states that "Ben and Jerri shall[] . . . [m]ake sure that all checking and savings accounts are made payable on death to the Trust."[1]

## D. Benny's Death

Benny died on March 5, 2021.

## E. The Second Amendment

Seven months after Benny's death, Jerri executed the "Second Amendment to The Kirkland Living Trust." Jerri deleted various provisions in the Restated Agreement and replaced them with new provisions. For example, she named herself as trustee and prohibited Calvin, Everett, and Kristin from "ever serving as trustee of any trust created under the Restated Agreement." She also provided that she would "have no liability arising from, related to, and/or connected with her service as a

---

[1]The record includes the account agreement for an account ending in 547 from First National Bank Texas showing that the account was opened on January 15, 1999; that the account was revised on February 1, 2020, to add Jerri and was set up as "Multi Party Account With Right of Survivorship and P.O.D. (Payable on Death) Designation"; and that the account was revised on March 11, 2020, to add the Kirkland Living Trust as the beneficiary, replacing Calvin and Kristin who had previously been listed as named beneficiaries.

6

trustee of any trust created under the Restated Agreement, except for intentional affirmative misconduct."[2]

## F.     The Underlying Suit

Five days after executing the Second Amendment, Jerri filed suit against Calvin for breach of fiduciary duty, alleging that he had failed to comply with his obligations as trustee under the Restated Agreement by failing to distribute to Jerri $7,000 per month for maintenance and support.[3]   Calvin answered with a general denial and pleaded affirmative defenses, including that Jerri's claims and damages were caused by her own acts and omissions.   Calvin later filed a counterclaim, alleging causes of action for breach of contract and breach of fiduciary duty, requesting removal of Jerri as trustee, and seeking various declarations.   Kristin intervened, asserting claims "with respect to documents and as to the $500,000 bank account[ at First National Bank Texas]."

## G.     Jerri's Deposition

In July 2022, Calvin's lawyer and Kristin's lawyer deposed Jerri.   They questioned her about the intent behind the various documents that she and Benny

---

[2]The Second Amendment dated October 6, 2021, was not acknowledged before a notary, so a new Second Amendment with the same effective date was executed by Jerri on January 28, 2022, and was acknowledged by a notary that same day.

[3]Two days after Jerri filed the suit against Calvin in Tarrant County District Court, Calvin filed Benny's will for probate in Hood County.

had signed, her personal assets, and how she had handled the parties' assets after Benny died.

Jerri explained that Benny's intent in signing the initial trust document was that "[h]e wanted his wishes to be known." With regard to the Restated Amendment, Jerri's understanding about the trustee was that Benny had chosen Calvin to become trustee upon Benny's death because of Calvin's knowledge of the glass companies that Benny had owned and because Benny felt that he could trust Calvin "to do what he wanted him to do." Jerri also understood that under the Restated Amendment, Benny intended for her to receive $7,000 per month from the trust or a lesser amount if she received government assistance.

Jerri said that the only income she had received during the marriage was Social Security and that it was approximately $300 per month. Her Social Security check was deposited into the First National Bank account.

Jerri was asked a variety of questions about the First National Bank account. She agreed that the account had $562,000 in it when Benny died.[4] She did not deposit that account into the trust. Instead, she used the account for her living expenses (approximately $8,000 to $9,000 per month), Benny's funeral, her house payment, and attorney's fees. Additionally, in May 2020, she used $150,000 from the account to

[4]She admitted that she did not give notice to the trust beneficiaries that she was claiming ownership of the account and that at least $450,000 in the account at the time of Benny's death had come from Benny. By our estimation, at $300 per month, the $112,000 that Jerri purportedly contributed to the account would require slightly over thirty-one years of monthly deposits.

8

purchase an annuity and listed her son as the beneficiary. She said that the First National Bank account had approximately $200,000 left in it as of the time of her deposition. Jerri mentioned that the account number had been changed because her home computer had been compromised. With the new account, she changed the beneficiary from the trust to her son.

Because Jerri had sued Calvin for not paying her $7,000 per month from the trust, she was asked what efforts she had made to determine if the trust was funded so that Calvin could have made monthly spousal maintenance payments to her after Benny's death; she said, "I did nothing." When asked what assets were in the trust when Benny died, Jerri said the glass companies, the vehicles, and the sale of the condo in New Mexico. But Jerri admitted that the title to the condo and the titles to the vehicles were not put into the trust before Benny's death.[5] And she said that she did nothing to place any assets in the trust.

Jerri admitted that in May 2021, two months after Benny's death, Calvin (in his capacity as trustee for the trust) had executed a general warranty deed that transferred to Jerri the house that she had been residing in with Benny prior to his death. As with

---

[5]Later during the questioning by Calvin's counsel, it was discovered that there was a warranty deed dated February 27, 2020, that purported to put into the trust Benny's interest in the New Mexico property. However, it was noted that other people have an interest in that property and would have had to consent to the sale of the property or buy out Benny's interest, so there was no liquid asset or cash in the trust.

the bank account, Jerri said that she was leaving the house to her son instead of having it revert to the trust when she dies.

Calvin's attorney questioned Jerri about the Second Amendment to the Restated Agreement that removed Calvin as trustee:[6]

Q. What was your understanding -- I'm not interested in any conversations with your lawyer. I want to know your understanding of the purpose of this [S]econd [A]mendment.

A. I don't know.

. . . .

Q. Did you understand that you were changing provisions in the [R]estated [A]mendment and the original trust?

A. No.

. . . .

Q. Did you understand that you've prohibited Calvin, Kristin[,] or Kristin's husband, Alan, from ever being a trustee of the trust?

A. No.

Q. Did you understand that your successor trustees that you've named are Debra Alumbaugh [(Jerri's sister)], Eric Hardaway[,] and then your next closest blood relative? Did you understand that?

A. No.

Q. Did you understand that under this trust, if you were to die, Debra Alumbaugh would decide how this trust goes?

A. No.

---

[6]For ease of reading, we have omitted the objections.

. . . .

Q.  Did Benny ever discuss with you letting Debra Alumbaugh be a trustee of the trust to take care of his kids after you died?

. . . .

A.  No.

. . . .

Q. . . .  So why have you named Debra Alumbaugh as the successor trustee, ma'am?

A.  I don't know.

. . . .

Q.  The [S]econd [A]mendment continues to indicate, this new version [dated January 28, 2022,] that we're going to remove Calvin as the trustee.  Right?  Is that correct?

A.  Yes.

Q.  And was that your intent?

A.  No.

Q.  The [S]econd [A]mendment also removes as successor trustee Alan Tindell and Kristin Tindell.  Is that correct?

A.  That's what it says.

Q.  Was that your intent?

A.  No.

. . . .

11

Q. . . . If it wasn't your intent to remove Calvin as the trustee, why did you sign not one but two different documents removing him as trustee?

A. On the advice of my attorney.

Kristin's attorney also asked Jerri about the importance of the role of trustee:

Q. Would you agree with me that the spot of trustee is an important part of a trust?

. . . .

A. Yes.

Q. . . . That's one of the primary things that people think about[] is who can I trust to do a good job as trustee. Isn't that right?

A. Right.

Q. And that's part and parcel of the actual gifts that are being made because you're handling whatever that gift is, whatever that asset is, over to the trustee who's supposed to take care of it and deal with it fairly for the benefit of all the beneficiaries?

. . . .

Q. . . . Isn't that your view on things?

A. Yes.

. . . .

Q. . . . Well, we do know that [Benny] thought that Calvin and Kristin would be good trustees because he named them in those documents. Right?

A. Right.

Q. Okay. And he also named them in this intake sheet . . . . Right?

A. Right.

In her capacity as trustee under the Second Amendment, Jerri had not funded the Survivor's Trust with anything. She had not arranged to take care of the trust's taxes; she had not investigated what assets were currently in the trust; she had not checked to see what bills were due on the New Mexico property or done anything to make sure that they were paid; and she had not reached out to the investment advisor to check on the Stifel account (which previously had $800,000 in it but had lost about $250,000), despite knowing that the stock market was dropping and had caused some stocks to fall by thirty percent. In fact, she admitted that she had not taken a single action since she had purportedly appointed herself as trustee of the trust.

## H. Calvin's Application for Temporary Injunction, the Hearing, and the Outcome

After taking Jerri's deposition, Calvin filed an application for temporary injunctive relief. The application states that

> Jerri has usurped control over the Trust and the Trust assets by unilateral amendment to the Trust in excess of her Trust powers after the Trust became irrevocable, which, without limitation, includes the putative[] (i) removal of Calvin as Trustee, (ii) appointment of herself as Trustee, (iii) diversion of assets from the Decedent's Trust to the Survivor's Trust, and (iv) distribution to herself of assets contrary to the Trust documents and clear intent of Benny for the Trust.

The application further states that

> [i]n Jerri's deposition on July 25, 2022, Calvin learned for the first time that shortly after Benny's death, rather than placing the funds in the Trust as she [had] promised to do in the Funding Agreement, Jerri moved all of the funds to her own bank account and purchased the

13

[a]nnuity for herself and her son. Until that time, neither Calvin nor Kristi[n] were aware that Jerri had done this or that her goal was to subvert the plan and purposes of the Trust by removing the primary source of the $7,000 monthly payments called for in the Trust. This new information has made it necessary for the injunctive relief sought in this [a]pplication.

At the hearing on the application, Calvin was the only witness who testified. The exhibits admitted at the hearing included the Restated Agreement, Schedule A, the Second Amendment to the Restated Agreement, the premarital agreement, the account agreements for the First National Bank account, and Jerri's deposition.

Calvin testified about the items in the trust and the inability to fund the trust. Calvin said that after Benny's death, he began tracking down assets. Calvin stated that the trust had the New Mexico property and some shares from one of the glass companies but that the shares were improperly put into the trust because no vote had occurred to transfer the shares. Calvin said that the money in the First National Bank account was not paid into the trust after Benny's death; instead, Jerri had taken the funds. Calvin explained that because the funds from the First National Bank account were not paid to the trust upon Benny's death, the trust did not have any liquid assets to make the designated $7,000 monthly maintenance support payments to Jerri. Additionally, due to Jerri's filing a counterapplication for issuance of letters testamentary in the probate court, Calvin said that he was blocked from getting letters testamentary to transfer other assets to the trust. Thus, when Jerri began asking

14

Calvin for her $7,000 monthly maintenance support the month after Benny died, Calvin told her that there were no liquid assets in the trust.

Calvin explained that there were checks from the sale of some of the glass businesses and that those checks needed to go into the trust, but he was not aware of any action that Jerri, after designating herself as trustee, had taken to gather up the assets and put them in the trust or open a bank account for the trust. Calvin said that she had not asked him for the checks.

Calvin testified about Jerri's separate property. He noted that the schedule to the premarital agreement lists no bank accounts for Jerri as her separate property. Calvin said that Jerri did not work or have any source of income and that she received Social Security payments.

Based on Jerri's actions with regard to the funds that she had removed from the First National Bank account, Calvin asked the trial court to enjoin Jerri from serving as trustee and to allow him to serve as trustee. Calvin also requested that the court put the funds remaining in the First National Bank account and the annuity that Jerri had purchased with funds from that account into the court's registry and that the court maintain the status quo and protect the trust's assets.

During closing arguments, Calvin's attorney and Kristin's attorney explained the various provisions in the trust. Calvin's attorney noted that the Restated Amendment allows amendments only to Articles II, III, and IV, so Jerri was not at liberty to modify Article I, which stated that she had resigned, nor was she allowed to

15

alter the beneficiaries' interests in the Decedent's Trust, which were set forth in Article V.

In an amended order dated November 8, 2022, the trial court granted in part Calvin's temporary-injunction application, enjoining Jerri from acting as trustee and from taking various actions related to Benny's assets and assets that should be included in the trust but specifically excluded the First National Bank account. Jerri then perfected this interlocutory appeal. Neither Calvin nor Kristin perfected an interlocutory appeal. After Jerri filed her appellate brief, the trial court signed an amended second amended order on March 14, 2023.

### III.  March 14, 2023 Order Is Not Void

In her first issue, Jerri argues that the amended order (the November 8, 2022 order) is void for failing to strictly comply with Texas Rule of Civil Procedure 683's mandatory requirements.[7]  Specifically, Jerri argues that the trial court's amended order fails to (1) state the reasons for its issuance and (2) specify any imminent and irreparable injury for which Calvin has no adequate remedy at law. As stated above in the background, the trial court rendered an amended second amended order on

---

[7]Rule 683 provides, in relevant part, that every order granting an injunction "shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained." Tex. R. Civ. P. 683. Rule 683 also requires that a temporary-injunction order state precisely why the applicant would suffer irreparable harm. *SISU Energy, LLC v. Hartman*, No. 02-19-00436-CV, 2020 WL 4006725, at *14 (Tex. App.—Fort Worth July 16, 2020, no pet.) (mem. op.).

16

March 14, 2023, which, for the reasons explained below, supersedes the November 8,

2022 order and moots Jerri's arguments as to the form of that order.

We have previously explained the significance of an amended injunction:

> An amended or modified temporary injunction supersedes and implicitly vacates a prior temporary injunction. *See Ahmed v. Shimi Ventures, L.P.*, 99 S.W.3d 682, 687–88 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *Smith v. Smith*, 681 S.W.2d 793, 797 (Tex. App.—Houston [14th Dist.] 1984, no writ); *see also Martin Kroesche Enters., Inc. v. Hilpold*, No. 13-11-00404-CV, 2012 WL 2609102, at *3 (Tex. App.—Corpus Christi[–Edinburg] July 5, 2012, no pet.) (mem. op.) ("When a trial court modifies a temporary injunction, the second order is a complete injunction in and of itself, thus superseding the original."); *Price Constr., Inc. v. Castillo*, 147 S.W.3d 431, 441 (Tex. App.—San Antonio 2004 . . . ) ([supp. op. on en banc reconsideration]) ("Any change in a judgment made during the trial court's plenary power is treated as a modified or reformed judgment that implicitly vacates and [supersedes] the prior judgment, unless the record indicates a contrary intent.")[, *pet. denied*, 209 S.W.3d 90 (Tex. 2005)]. Such a modified injunction renders a prior injunction ineffectual. *See B. & M. Mach. Co. v. Avionic Enters.*, 566 S.W.2d 901, 902 (Tex. 1978) ("[T]he second judgment reformed and, in effect, vacated the first judgment."); *Price Constr., Inc.*, 147 S.W.3d at 441; *Anderson v. Teco Pipeline Co.*, 985 S.W.2d 559, 562 (Tex. App.—San Antonio 1998, pet. denied).

*McDowell v. McDowell*, No. 02-16-00038-CV, 2016 WL 4141029, at *1 (Tex. App.—

Fort Worth Aug. 4, 2016, no pet.) (mem. op.) (footnote omitted).

The Corpus Christi–Edinburg Court of Appeals has explained that once an

order is modified, the modification might moot some complaints relating to the earlier

order:

> If, after an appeal has been perfected, a trial court modifies the appealed-of order, the reviewing court "must treat the appeal as from the subsequent order or judgment and may treat actions relating to the appeal of the first order or judgment as relating to the appeal of the

subsequent order or judgment." Tex. R. App. P. 27.3; *see also Flamingo Permian Oil & Gas, L.L.C. v. Star Expl., L.L.C.*, 569 S.W.3d 329, 332 (Tex. App.—El Paso 2019, no pet.); *Parker v. Schlumberger Tech. Corp.*, 475 S.W.3d 914, 926 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *Tex. Health & Hum*[.] *Servs. Comm'n v. Advoc*[s.] *for Patient Access, Inc.*, 399 S.W.3d 615, 625 (Tex. App.—Austin 2013, no pet.). Where the complained-of defects of an initial order are remedied in the issuance of a subsequent order, the initial complaints become moot. *Flamingo*, 569 S.W.3d at 331 (dismissing as moot three issues rectified by the issuance of a subsequent order executed while the appeal was pending); *see also Smith . . .*, 681 S.W.2d [at] 797 . . . .

*Ahtna Support & Training Servs., LLC v. Asset Prot. & Sec. Servs., LP*, No. 13-19-00196-CV, 2020 WL 1856470, at *3 (Tex. App.—Corpus Christi–Edinburg Apr. 9, 2020, no pet.) (mem. op.).

Here, the March 14, 2023 order contains the following findings:

1.      The [c]ourt finds that . . . Calvin . . . has shown a probable right to recover on some or all of the relief sought at a final hearing. Specifically, . . . Calvin . . . has demonstrated that he has a probable right to recover on his declaratory[-]judgment claims regarding . . . Jerri['s] . . . self-appointment as Trustee of The Kirkland Living Trust, the ability of . . . Jerri . . . to remove a validly appointed trustee, and . . . Jerri['s] . . . compliance with the trust provisions regarding the appointment and removal of a trustee of The Kirkland Living Trust.

2.      The [c]ourt further finds that . . . Calvin . . . has shown a probable right to recover on some or all of the relief sought at a final hearing. Specifically, . . . Calvin . . . has demonstrated that he has a probable right to recover on his claims against . . . Jerri . . . for breach of fiduciary duty.

3.      The [c]ourt further finds that . . . Calvin . . . has demonstrated that he will suffer imminent and irreparable harm if the requested injunctive relief is not awarded by the [c]ourt. Further, . . . Calvin . . . has shown that he will suffer imminent and irreparable harm if he is not allowed to serve as Trustee of The Kirkland Living Trust and

18

. . . Jerri . . . remains in place as Trustee of The Kirkland Living Trust.

> 4. The [c]ourt further finds that . . . Calvin . . . does not have an adequate remedy at law because (i) . . . Jerri['s] . . . violation of the terms of The Kirkland Living Trust constitute irreparable harm; (ii) the damages that . . . Calvin . . . has sustained (and will continue to sustain) are uncertain and/or difficult to quantify; and (iii) there is substantial risk that, without injunctive relief, . . . Jerri . . . will continue to violate the terms of The Kirkland Living Trust and take unauthorized action on behalf of The Kirkland Living Trust.

Although not a model of clarity, when the March 14, 2023 order is read as a whole, the findings set forth the reasons for the issuance of the temporary injunction—Jerri's removal of a validly appointed trustee, her self-appointment as trustee, and her lack of compliance with the trust provisions—and specify the imminent and irreparable injury for which Calvin has no adequate remedy at law—as explained in numbered paragraphs three and four above. The March 14, 2023 order thus corrects the deficiencies that Jerri complained were explicit in the November 8, 2022 order. Because the March 14, 2023 order supersedes the November 8, 2022 order and because the complained-of defects of the November 8, 2022 order were remedied in the March 14, 2023 order, Jerri's complaints regarding the order's nonconformity with Rule 683 are moot. *See id.* (citing *Flamingo*, 569 S.W.3d at 331). We therefore overrule Jerri's first issue as moot.

### IV. Ultimate Relief Not Granted

In her second issue, Jerri argues that the trial court abused its discretion by awarding Calvin the ultimate relief he sought in the underlying lawsuit. Specifically,

Jerri argues that Calvin asserted several declaratory-judgment causes of action and that "[i]n his [a]pplication, Calvin sought to accomplish the overarching goal of his [c]ounterclaim by recasting his declaratory[-]judgment causes of action as requests for temporary injunctive relief." Jerri, however, ignores the March 14, 2023 order's wording, which limited the duration and which does not address all of the requested declarations or claims set forth in Calvin's counterclaim.

The Eastland Court of Appeals has succinctly summarized the applicable law and analyzed how it plays out in a scenario similar to the one presented here:

> The temporary relief awarded by a temporary injunction cannot be such as "to accomplish the object of the suit." *Tex. Foundries, Inc. v. Int'l Moulders & Foundry Workers' Union*, . . . 248 S.W.2d 460, 464 ([Tex.] 1952); *see Friona Indep. Sch. Dist. v. King*, 15 S.W.3d 653, 657 (Tex. App.—Amarillo 2000, no pet.). "To do so is tantamount to adjudicating the litigants' respective rights without the benefit of a trial and, therefore, is error." *Friona*, 15 S.W.3d at 657. This principle is based upon a concern for timing and delay. The facts in *Friona* illustrate this principle. The case involved a high school senior [who] had been suspended from his school baseball team by the school district. *Id.* at 656. His parents sought and obtained a temporary injunction reinstating him to the team. *Id.* A final trial on the merits was not scheduled until after he would have completed his last season of baseball. *Id.* at 659. The Amarillo Court of Appeals concluded that the trial court's temporary injunction accomplished the object of the suit in violation of the tenets of *Texas Foundries*, because "the heart of the controversy" was the student's opportunity to play baseball, yet the case was not set for trial until after the season would be concluded. *Id.*
>
> Unlike the situation in *Friona,* the right that [appellee] sought to protect was not one of limited duration. The temporary injunction entered by the trial court did not accomplish the entirety of [appellee's] lawsuit because it was limited in duration—"until trial in the cause or until further order." The temporary injunction served the purpose of preserving the status quo between the parties pending a final trial on the

20

merits. The portion of [appellant's] second issue complaining that the temporary injunction accomplished the entirety of [appellee's] lawsuit is overruled.

*Babu v. Zeeck*, 478 S.W.3d 852, 854–55 (Tex. App.—Eastland 2015, no pet.).

Here, Jerri's general argument fails to recognize that the March 14, 2023 order specifically states that she is enjoined from acting as trustee "during the pendency of this action." Just as in the Eastland case, the temporary injunction entered here by the trial court in its March 14, 2023 order did not accomplish the entirety of Calvin's counterclaim because it was limited in duration. *See id.* at 855. Moreover, the March 14, 2023 order specifically states that the application for temporary injunction was "GRANTED in part[] and DENIED in part." The order does not dispose of Calvin's counterclaim against Jerri for breach of contract, nor does it dispose of his request for numerous declarations that span eight pages in his counterclaim. *See Matter of Bumstead Fam. Irrevocable Tr.*, No. 13-20-00350-CV, 2022 WL 710159, at *19 (Tex. App.—Corpus Christi–Edinburg Mar. 10, 2022, pet. denied) (mem. op.) (rejecting appellants' contention that the trial court's order provided the ultimate relief sought in the underlying lawsuit because that argument failed to consider the number and variety of the causes of action pleaded by the beneficiaries and the scope of the relief sought in the beneficiaries' live pleadings). Accordingly, we overrule Jerri's second issue.

## V. Evidence Was Presented of an Imminent and Irreparable Injury that Lacks an Adequate Remedy by Appeal

In her third issue, Jerri argues that the trial court abused its discretion by granting a temporary injunction because Calvin allegedly did not prove that an irreparable injury exists.[8] The trial court's March 14, 2023 order states otherwise and is supported by the record.

### A. Standard of Review

We have recently set out the standard of review for a temporary-injunction order:

---

[8]To the extent that Jerri also argues that Calvin failed to plead an actual threat of an imminent and irreparable injury for which he lacks an adequate remedy at law, his application specifically states the following:

(i) The harm to Calvin and the other [t]rust beneficiaries is imminent and probable because Jerri is currently using and expending, and in all probability will continue to use and expend, funds and assets of the [t]rust in her possession and she lacks the funds and resources to replace or reimburse any [t]rust funds and assets that she dissipates or exhausts.

(ii) Calvin and the other [t]rust beneficiaries will suffer irreparable injury from the permanent loss of funds and assets that should have been in the [t]rust.

(iii) There is no adequate remedy at law that will give Calvin and the other [t]rust beneficiaries complete, final[,] and equitable relief because a money judgment will be insufficient to replace the assets in Jerri's possession or control, and Jerri is continuing to dissipate [t]rust assets in legal fees she is incurring to facilitate the breach of her duties to the [t]rust and to the [t]rustee.

Accordingly, this portion of Jerri's third issue lacks merit.

In an appeal from an order granting a temporary injunction, our scope of review is restricted to the validity of the order granting relief. *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 220 (Tex. App.— Fort Worth 2009, pet. denied). The decision to grant or deny a request for a temporary injunction is within the trial court's discretion, and we will not reverse its decision absent an abuse of discretion. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (op. on reh'g); *Frequent Flyer Depot*, 281 S.W.3d at 220. Our review does not include the merits of the underlying case but is strictly limited to determining whether there has been a clear abuse of discretion by the trial court in determining whether the applicant is entitled to a preservation of the status quo pending trial on the merits. *Henry v. Cox*, 520 S.W.3d 28, 33–34 (Tex. 2017); *Brooks v. Expo Chem. Co. . . .* , 576 S.W.2d 369, 370 (Tex. 1979). Indeed, because the "effect of a premature review of the merits is to deny the opposing party the right to trial by a jury[,] . . . it will not be assumed that the evidence taken at a preliminary hearing on [a] temporary injunction will be the same as the evidence developed at a trial on the merits." *Brooks*, 576 S.W.2d at 370.

When reviewing a trial court's order granting a temporary injunction, we must view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor, and determine whether the order was so arbitrary that it exceeds the bounds of reasonable discretion. *Frequent Flyer Depot*, 281 S.W.3d at 220. A trial court does not abuse its discretion if it bases its decision on conflicting evidence and at least some evidence in the record reasonably supports the trial court's decision. *Id.*

*Anderson v. Innovative Insulation, Inc.*, No. 02-21-00183-CV, 2021 WL 5742082, at \*5–6

(Tex. App.—Fort Worth Dec. 2, 2021, no pet.) (mem. op.).

With regard to preserving the status quo,

The Texas Supreme Court has long defined the "status quo" as the "last, actual, peaceable, non-contested status [that] preceded the pending controversy." *Clint Indep. Sch. Dist. [v. Marquez]*, 487 S.W.3d [538,] 555 [(Tex. 2016)]; *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (orig. proceeding); *Janus Films, Inc. v. City of Fort Worth*, 358 S.W.2d 589, 589 (Tex. 1962) . . . ; *Transp. Co. of Tex. v. Robertson Transp[s.], Inc.*, 261 S.W.2d 549, 553 (Tex. 1953).

23

*Matter of Bumstead Fam. Irrevocable Tr.*, 2022 WL 710159, at *16.

## B. Applicable Law on Breach of Fiduciary Duty and Probable, Imminent, and Irreparable Injury

The Houston Fourteenth Court of Appeals has recently set forth the fiduciary standards imposed on trustees:

> "High fiduciary standards are imposed upon trustees, who must handle trust property solely for the beneficiaries' benefit." *Ditta v. Conte*, 298 S.W.3d 187, 191 (Tex. 2009); *see Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998); *see also* Tex. Prop. Code Ann. §§ 113.051–[.058]. A trustee owes an unwavering duty of good faith, fair dealing, loyalty, and fidelity to the trust's beneficiaries when managing the affairs of a trust and its corpus. *See* Tex. Prop. Code Ann. §§ 113.051–.058; *Harrison v. Reiner*, 607 S.W.3d 450, 462 (Tex. App.—Houston [14th Dist.] 2020, pet. denied); *Ludlow v. DeBerry*, 959 S.W.2d 265, 279 (Tex. App.—Houston [14th Dist.] 1997, no writ).

*Moody Nat'l Bank v. Moody*, No. 14-21-00096-CV, 2022 WL 14205534, at *7 (Tex. App.—Houston [14th Dist.] Oct. 25, 2022, pet. filed) (mem. op.). To succeed on a breach-of-fiduciary-duty claim, a plaintiff must establish, "(1) a fiduciary relationship between the plaintiff and defendant, (2) a breach by the defendant of his fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or benefit to the defendant as a result of the defendant's breach." *Severs v. Mira Vista Homeowners Ass'n*, 559 S.W.3d 684, 703 (Tex. App.—Fort Worth 2018, pet. denied).

Additionally, because Jerri challenges the proof of an irreparable injury and no adequate remedy at law, we set forth the applicable law on those concepts:

> Included within the probable injury are the elements of imminent harm, irreparable injury, and no adequate remedy at law. *Blackthorne v. Bellush*, 61 S.W.3d 439, 444 (Tex. App.—San Antonio 2001, no pet.). "An

existing remedy is adequate if it 'is as complete and as practical and efficient to the ends of justice and its prompt administration as is equitable relief.'" *Id.* (quoting *Ballenger v. Ballenger*, 694 S.W.2d 72, 76 (Tex. App.—Corpus Christi[–Edinburg] 1985, no writ)). If the defendant is insolvent, there is no adequate remedy. *Id.* (citing *Ballenger*, 694 S.W.2d at 76; *Surko Enters., Inc. v. Borg–Warner Acceptance Corp.*, 782 S.W.2d 223, 225 (Tex. App.—Houston [1st Dist.] 1989, no writ)). Further, even if damages are subject to a precise calculation, an injunction will lie to prevent the dissipation of specific funds that would otherwise be available to pay a judgment. *See Minexa Ariz[.], Inc. v. Staubach*, 667 S.W.2d 563, 567–68 (Tex. App.—Dallas 1984, no writ). In determining imminent harm, "the trial court may determine that, when violations are shown up to or near the date of trial, the defendant has engaged in a course of conduct[,] and the court may assume that it will continue, absent clear proof to the contrary." *Operation Rescue–Nat'l v. Planned Parenthood of Hous[.] & Se. Tex., Inc.*, 937 S.W.2d 60, 77 (Tex. App.—Houston [14th Dist.] 1996) [(citing *State v. Tex. Pet Foods*, 591 S.W.2d 800, 804 (Tex. 1979))], *aff'd as modified*, 975 S.W.2d 546 (Tex. 1998) . . . .

*Hartwell v. Lone Star, PCA*, 528 S.W.3d 750, 763–64 (Tex. App.—Texarkana 2017, pet.

dism'd).

> ### C. Analysis[9]

---

[9]Calvin focuses much of his argument on Jerri's expenditure of funds from the First National Bank account. As noted above, that account was designated as a multi-party account with right of survivorship. Jerri's counsel argued during the temporary-injunction hearing that based on that designation, the account would not go into the trust until the surviving spouse's death. Notably, the trial court specially excepted the First National Bank account from the list of actions that Jerri was enjoined from taking. We therefore exclude from our analysis the actions that Jerri took with regard to that account. *See generally* Tex. R. App. P. 25.1(c) ("A party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal. . . . The appellate court may not grant a party who does not file a notice of appeal more favorable relief than did the trial court except for just cause.").

Here, the record demonstrates that upon Benny's death, the trust provided for Calvin to serve as trustee. While Calvin was serving as trustee, Jerri executed the Second Amendment to remove Calvin as trustee and appoint herself as trustee. This appointment was a change to Article I of the Restated Amendment and violated 5.C. of the Restated Amendment, allowing only Articles II, III, or IV to be amended by the surviving spouse. Jerri's appointment of herself as trustee also violated the Restated Amendment's 3.A., which required that a successor trustee not be related to the surviving spouse. Additionally, Jerri's appointment of herself as trustee altered the status quo.

Further, once Jerri usurped the role of trustee, she did not uphold the high fiduciary standards required of a trustee. Jerri did not exhibit fidelity to the beneficiaries of the Decedent's Trust as she admitted that she had not taken a single action since she had purportedly appointed herself as trustee of the trust: she had not arranged to take care of the trust's taxes; she had not investigated what assets were currently in the trust; she had not checked to see what bills were due on the New Mexico property or done anything to make sure that they were paid; and she had not reached out to the investment advisor to check on the Stifel account that had rapidly declined in value. Indeed, she professed to not knowing that she had removed Calvin as trustee.

Jerri claims that Calvin never proved that she had tried to harm him or that she intended to harm him in the future. The failures listed above are some evidence that

26

Jerri had harmed Calvin, who was a beneficiary of the Decedent's Trust and the Stifel account. Moreover, as stated above, "[i]n determining imminent harm, 'the trial court may determine that, when violations are shown up to or near the date of trial, the defendant has engaged in a course of conduct[,] and the court may assume that it will continue, absent clear proof to the contrary.'" *Hartwell*, 528 S.W.3d at 764. The trial court was within its discretion to conclude that Jerri's actions in removing Calvin as trustee and appointing herself as trustee—both actions in violation of specific provisions in the trust—and then failing to act as trustee demonstrated that she had engaged in a course of conduct that would continue in the future.

Jerri contends that there is no actual threat because the business assets were never transferred to the trust prior to Benny's death "and thus must pass through the probate process before anyone can access the assets." Jerri's argument ignores that the trustee will also be appointed as the executor, and as the trustee, she was required to carry out basic duties under the trust as stated in Section 6.A. of the Restated Amendment: "**Trustee's Basic Duties.** During the term of this Trust, the Trustee shall hold, manage, invest[,] and reinvest the trust estate, collect the income and profits from it, pay the necessary expenses of trust administration, and distribute the net income and principal as provided in this ARTICLE VI." She also ignores that her inaction put assets at risk, including the Stifel investment account, which was declining in value. Based on Jerri's deposition testimony, she did not understand the terms of the Second Amendment that she had executed or the ramifications of that

27

document, including that it placed the trustee duties on herself. Her failure to carry out any of the trustee's basic duties has presented an actual threat to Calvin as the assets that are supposed to go into the Decedent's Trust have lingered without any management or oversight for over two years—all the while losing interest on checks from the glass companies that should have been deposited and allowing investment accounts to potentially further decrease in value.

Jerri also claims that the only time that Calvin addressed the third temporary-injunction element (imminent and irreparable injury) was during his initial closing argument. Jerri allows that the closing argument pointed back to Calvin's testimony, but she contends that his "testimony only speculated about [her] financial abilities." The record demonstrates that Calvin's testimony coincided with the premarital agreement, which listed Jerri's minimal separate property and which reflected that she had no cash or checking accounts. Further, she testified during her deposition that she received only $300 per month in Social Security income.

Jerri further argues that Calvin failed to plead and prove that he lacked an adequate remedy at law. Jerri contends that "Calvin baldly concluded [that] he lacked [an] adequate remedy at law because a monetary award would be insufficient" and that his speculation that Jerri could not pay a money judgment was no evidence that any injury to Calvin was irreparable so as to render a money judgment an inadequate remedy. As explained above, Calvin's testimony, along with the premarital agreement and Jerri's deposition testimony, constituted some evidence that Jerri lacked sufficient

28

assets to replace the loss of funds from the Stifel investment account that she had failed to oversee as trustee. Moreover, case law undercuts Jerri's argument as demonstrated by the following case from the Dallas Court of Appeals in which the appellants argued that appellee's evidence established that the damages could be calculated and, therefore, that there was an adequate remedy at law:

> We disagree.

> No adequate remedy at law exists if damages are incapable of calculation or if a defendant is incapable of responding in damages. *Hilb, Rogal & Hamilton Co. of Tex. v. Wurzman*, 861 S.W.2d 30, 32 (Tex. App.—Dallas 1993, no writ); *Recon Explor*[.]*, Inc. v. Hodges*, 798 S.W.2d 848, 851 (Tex. App.—Dallas 1990, no writ); *R.H. Sanders Corp. v. Haves*, 541 S.W.2d 262, 265 (Tex.[ ]App.—Dallas 1976, no writ). A plaintiff does not have an adequate remedy at law if the defendant is insolvent. *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 611 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Blackthorne* . . . , 61 S.W.3d [at] 444 . . . ; *Surko Enter*[*s*]*., Inc.* . . . , 782 S.W.2d [at] 225 . . . .

> During the hearing, [appellant] testified Little Bit Productions [of which he was the sole shareholder and sole director] has no assets. Additionally, he testified he transferred his personal assets to his wife fifteen years before the temporary[-]injunction hearing. According to [appellant], the only assets he had to satisfy any judgment rendered against him or Little Bit Productions were a 1990 Dodge Caravan, some cash, and personal items such as clothing and a watch. In light of this testimony, we cannot conclude the trial judge abused his discretion in concluding [appellee] had no adequate remedy [at] law.

*Loye v. Travelhost, Inc.*, 156 S.W.3d 615, 621–22 (Tex. App.—Dallas 2004, no pet.) (op. on reh'g); *see also Hartwell*, 528 S.W.3d at 763–64 ("If the defendant is insolvent, there is no adequate remedy."); *Staubach*, 667 S.W.2d at 567–68 ("The fact that damages may be subject to the most precise calculation becomes irrelevant if the defendants in

a case are permitted to dissipate funds specific that would otherwise be available to pay a judgment."). The same applies here: Calvin has no adequate remedy at law because there is some evidence that Jerri lacks sufficient assets to reimburse Calvin for the amount that the Stifel account has decreased.

Viewing the evidence in the light most favorable to the trial court's order and indulging every reasonable inference in its favor, Calvin sufficiently demonstrated that he would be irreparably harmed if Jerri were not enjoined from acting as trustee and that he had no adequate remedy by appeal because she is incapable of responding in damages. We therefore hold that the trial court's temporary-injunction order is not so arbitrary that it exceeds the bounds of reasonable discretion. We overrule Jerri's third issue.[10]

## VI. Prohibition on Participation in Probate Proceeding Exceeds Trial Court's Jurisdiction and Anti-Suit Injunction Has No Support in Record

In her fourth issue, Jerri argues that the Hood County Court has dominant jurisdiction over the probate proceeding. Although Calvin interprets the issue as whether a dominant-jurisdiction analysis is needed and concludes that it is unnecessary because the dispute involves non-testamentary assets, that is not the crux of Jerri's fourth issue. Instead, her specific argument is that "the trial court below is without authority to enjoin [her] from undertaking action in the [p]robate

---

[10]In a footnote related to her third issue, Jerri requests that we take judicial notice of the clerk's file for the probate proceeding in Hood County. However, we resolve her third issue without the need to reference the clerk's file for the probate case.

[p]roceeding." Within her argument, Jerri points out that "[t]he temporary injunction, in part, operates as an anti-suit injunction insofar as Jerri is enjoined from 'taking any action to oppose, challenge, interfere with, or further delay the issuance of letters testamentary to . . . Calvin . . . in Probate Cause No. P09484, pending in Hood County, Texas.'" Jerri contends that Calvin failed to satisfy the requirements necessary for the award of such a temporary injunction because an anti-suit injunction "should be used only in compelling circumstances" and because "[t]he party seeking the injunction has the burden of showing that a clear equity demands the injunction." Case law supports Jerri's premise.

## A.     Relevant Law and Standard of Review

The Houston Fourteenth Court of Appeals has summarized the law on anti-suit injunctions:

> A unique and extraordinary remedy, an anti-suit injunction will issue "only in very special circumstances." *Golden Rule*[ *Ins. Co. v. Harper*], 925 S.W.2d [649,] 651 [(Tex. 1996)] (citing *Christensen v. Integrity Ins. Co.*, 719 S.W.2d 161, 163 (Tex. 1986); *Gannon v. Payne*, 706 S.W.2d 304, 306 (Tex. 1986)). The Supreme Court of Texas has identified those circumstances as[] (1) addressing a threat to a court's jurisdiction; (2) preventing the evasion of important public policy; (3) preventing a multiplicity of suits; and (4) protecting a party from vexatious or harassing litigation. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 512 (Tex. 2010); *Golden Rule*, 925 S.W.2d at 651. An anti-suit injunction is a remedy to be employed "sparingly" and only in the most "compelling" circumstances when "clear equity demands" it and when required to prevent an "irreparable miscarriage of justice." *See Golden Rule*, 925 S.W.2d at 651; *Gannon*, 706 S.W.2d at 307. The party seeking the injunction bears the burden to demonstrate that "a clear equity is present." *Christensen*, 719 S.W.2d at 163.

31

We review a trial court's anti-suit injunction under an abuse-of-discretion standard. *Gannon*, 706 S.W.2d at 305. A trial court abuses its discretion by acting arbitrarily and unreasonably, without reference to guiding rules or principles, or by misapplying the law to the established facts of the case. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

. . . .

There are no precise guidelines for judging the propriety of an anti-suit injunction; we must carefully examine the circumstances of each situation. *Gannon*, 706 S.W.2d at 307.

*Ron v. Ron*, 604 S.W.3d 559, 568–69 (Tex. App.—Houston [14th Dist.] 2020, no pet.). Additionally, as the Corpus Christi–Edinburg Court of Appeals has held, "a district court that lacks probate jurisdiction cannot enjoin a party from proceeding in probate court." *Fernandez v. John G. & Marie Stella Kenedy Found.*, 315 S.W.3d 542, 545 (Tex. App.—Corpus Christi–Edinburg 2008) (mem. op.), *aff'd*, 315 S.W.3d 512 (Tex. 2010).

## B.    Analysis

Here, the underlying case in the trial court was the first-filed case, but the trial court—the 352nd District Court of Tarrant County—does not have jurisdiction over probate proceedings. *See generally* Tex. Gov't Code Ann. § 25.0003(e) ("In a county that has a statutory probate court, a statutory probate court is the only county court created by statute with probate jurisdiction."), § 25.2221(c) ("Tarrant County has the following statutory probate courts: (1) Probate Court No. 1 of Tarrant County; and (2) Probate Court No. 2 of Tarrant County."). Accordingly, the trial court cannot enjoin Jerri from proceeding in the probate case. *See Fernandez*, 315 S.W.3d at 545.

Additionally, this case does not present any of the instances that would support the anti-suit-injunction provision in the March 14, 2023 order. Carefully examining the circumstances presented here, even in the light most favorable to and drawing all reasonable inferences in favor of the decision, we cannot conclude that the facts underlying this case illustrate the "very special circumstances" and the "clear equity" required for including the anti-suit-injunction provision in the March 14, 2023 order. *See Marshall v. Marshall*, No. 14-17-00930-CV, 2021 WL 971309, at *4 (Tex. App.—Houston [14th Dist.] Mar. 16, 2021, no pet.) (mem. op.) (holding that trial court abused its discretion by enjoining co-trustees from litigating matters related to the trusts in any other court); *Ron*, 604 S.W.3d at 572 (finding no evidence in the record to show that the anti-suit-injunction portion of the temporary-injunction order was appropriate). Accordingly, we sustain Jerri's fourth issue.

## VII. Conclusion

Having overruled Jerri's first three issues, but having sustained her fourth issue, we modify the judgment to delete the portion of the March 14, 2023 order that enjoins Jerri from "taking any action to oppose, challenge, interfere with, or further delay the issuance of letters testamentary to . . . Calvin . . . in Probate Cause No. P09484, pending in Hood County, Texas," so that the modified paragraph reads as follows:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff Jerri Kirkland is enjoined and prohibited, with the exception of the First National Bank account, during the pendency of this action

33

from, directly or indirectly: (a) assigning, transferring, conveying or otherwise transferring and/or granting a lien, security interest or other encumbrance on any real property or personal property that was, at the time of death of Benny Kirkland, the separate or community property of Benny Kirkland or the community property of Plaintiff Jerri Kirkland; (b) taking any action to utilize, transfer, dispose of or secrete any assets which should be included in The Kirkland Living Trust; and (c) taking any action to oppose, challenge, and/or interfere with Defendant Calvin Kirkland's efforts, on behalf of The Kirkland Living Trust, to preserve, protect and acquire trust assets.

As modified, we affirm the trial court's March 14, 2023 order. *See* Tex. R. App. P. 43.2(b); *cf. Estate of Shultz*, No. 11-21-00177-CV, 2022 WL 4099404, at *11 (Tex. App.—Eastland Sept. 8, 2022, no pet.) (mem. op.) (modifying and affirming as modified a temporary-injunction order).

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: May 25, 2023

34